UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY SHAHIN,

    Plaintiff,

v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Case No. 18-cv-12939

Paul D. Borman
United States District Judge

Patricia T. Morris
United States Magistrate Judge

<u>OPINION AND ORDER: (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF NO. 22); (2) ADOPTING THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE PATRICIA T. MORRIS (ECF NO. 21); (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16); (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 20); and (5) AFFIRMING THE FINDINGS OF THE COMMISSIONER</u>

On September 23, 2019, Magistrate Judge Patricia T. Morris issued a Report and Recommendation (R&R) addressing the cross-motions for summary judgment in this action. (ECF No. 21, R&R.) In the R&R, Magistrate Judge Morris recommended that the Court deny Plaintiff's March 8, 2019 Motion for Summary Judgment (ECF No. 16), grant Defendant's May 23, 2019 Motion for Summary Judgment (ECF No. 20), and affirm the findings of the Commissioner.

Now before the Court are Plaintiff's Objections to the R&R. (ECF No. 22, Objections.) Defendant, after receiving an extension, filed a timely Response. (ECF

No. 26, Response.) Having conducted a *de novo* review of the parts of the Magistrate Judge's R&R to which objections have been filed pursuant to 28 U.S.C. § 636(b)(1), the Court rejects Plaintiff's Objections, adopts the Magistrate Judge's R&R, and affirms the findings of the Commissioner.

## I. BACKGROUND

The Court has reviewed the Magistrate Judge's extensive summary of the background of this case in light of the record and finds that it is accurate. (ECF No. 21, R&R, PgID 682–83, 686–707.) In addition, plaintiff has not specifically objected to the background section of the R&R. Therefore, the Court adopts the background section in full. (*Id.*)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of the portions of the Magistrate Judge's R&R to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004). A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Only those objections that are specific are entitled to a *de novo* review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report

that the district court must specially consider." *Id.* (internal quotation marks omitted). A general objection, or one that merely restates arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. An "objection" that does nothing more than disagree with a magistrate judge's determination "without explaining the source of the error" is not a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Court's review of the findings of the Administrative Law Judge (ALJ) is limited to determining whether those findings are supported by substantial evidence and made pursuant to proper legal standards. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(h)); *see also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). It is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal quotation marks omitted). "If the Commissioner's decision is supported by substantial evidence, [the court] must defer to that decision, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.' " *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc.*

*Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

As to whether proper legal criteria were followed, a decision of the Social Security Administration (SSA) supported by substantial evidence will not be upheld "where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004)). SSA regulations establish a "five-step sequential evaluation process" for making a disability determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (See paragraph (b) of this section.)
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (See paragraph (c) of this section.)
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (See paragraph (d) of this section.)
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. See paragraphs (f) and (h) of this section and § 416.960(b).
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work

4

experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. See paragraphs (g) and (h) of this section and § 416.960(c).

20 C.F.R. § 416.920(a)(4). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

This Court does not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip*, 25 F.3d at 286. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility' ") (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

### III. ANALYSIS

Plaintiff makes one objection to Magistrate Judge Morris's R&R. (ECF No. 22, Objections, PgID 721–28.) She argues that ALJ Dianne S. Mantel inappropriately relied on objective evidence when she discounted Plaintiff's

allegations of symptom severity to make her residual functional capacity (RFC) determination, and that Magistrate Judge Morris duplicated this error when she found that ALJ Mantel's RFC determination was supported by substantial evidence. (ECF No. 22, Objections, PgID 722.) Review of the record reveals that ALJ Mantel did overemphasize objective evidence, but that her error was ultimately harmless because substantial evidence supports a finding that Plaintiff is not disabled.

Overemphasis on objective evidence is inappropriate in cases of fibromyalgia because "fibromyalgia patients present no objectively alarming signs." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Normal diagnostic techniques such as CT scans, X-rays, and clinical tests are "of little aid or relevance in the diagnosis of [a Claimant's] disabling fibrositis [fibromyalgia], except as a means of excluding certain neurologic or orthopaedic causes of her pain." *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). Indeed, people with fibromyalgia often have normal muscle strength, full range of motion, and normal neurological reactions—the only way to diagnose fibromyalgia is to test whether there is tenderness in certain focal points on the patient's body and systematically eliminate other diagnoses. *Id.* Therefore, courts and ALJs must be cautious not to dismiss or minimize diagnoses of fibromyalgia in disability determinations. *See Rogers*, 486 F.3d at 244 ("[T]he ALJ's decision here impliedly

dismissing or minimalizing Rogers' fibromyalgia and instead accepting the non-treating doctors' opinions as to her limitations from "arthralgias" was not based upon substantial evidence.").

A diagnosis of fibromyalgia, without more, however, is insufficient to establish a disability under the five-step disability framework. *See Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) ("[A] *diagnosis* of fibromyalgia does not automatically entitle Vance to disability benefits."). Under the five-step framework, if the ALJ has accepted fibromyalgia as a severe impairment at step two, then, at step four, the ALJ must evaluate the severity of the symptoms and their effect on the claimant's ability to work using a two-part analysis. *See Rogers*, 486 F.3d at 247. First, the ALJ must determine "whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id.* Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* The second part of the analysis involves analysis of myriad factors—the claimant's daily activities; the location, duration, and intensity of symptoms; the steps taken to alleviate the symptoms, any side effects of medications used to treat the symptoms; and other factors related to the claimant's ability to work. *Id.* It also requires the ALJ to evaluate the credibility of the claimant and other witnesses. *Id.*

The ALJ should make any credibility assessments by scrutinizing the consistency of the testimony with the record as a whole. *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). Inconsistencies between the claimant's statements and other evidence in the record weaken the credibility of the claimant though they are "not necessarily defeating." *Id*. Inconsistencies between the claimant's allegations of pain and the objective medical record are not especially probative in fibromyalgia cases, where the claimant's "subjective pain complaints play an important role in the diagnosis and treatment of the condition." *See id.*

Consistencies between the claimant's statements, however, and the opinions of the claimant's treating doctors, when those opinions are entitled to deference, however, significantly bolster the claimant's credibility in fibromyalgia cases. *See id.* at 864 (noting that the claimant's testimony was consistent with her treating doctor's consistent opinion that she was not able to work full time); *see also Rogers*, 486 F.3d at 249 ("Notably, Rogers' own treating physicians also recommended that she remain as active as possible, yet this did not alter their opinions as to her functional limitations and work restrictions."); *Cooper v. Comm'r of Soc. Sec.*, No. 13-cv-11883, 2014 WL 4606010 (E.D. Mich. June 17, 2014) *rep. and rec. adopted by Cooper v. Comm'r of Soc. Sec.*, No. 13-cv-11883, 2014 WL 4607960 (E.D. Mich. Sept. 15, 2014) ("The diminished potency of traditional evidence has heightened the

importance of treating sources in fibromyalgia cases."). Conclusory statements by a treating doctor that the claimant is disabled are not entitled to deference and thus do little to bolster the claimant's credibility. *Vance*, 260 F. App'x at 805 (finding a treating doctor's broad opinion that the claimant could not "hold down any type of job" conclusory). Finally, where a treating doctor's opinions do not address the claimant's "actual functional capacity" or explain "what functions the claimant would or would not be able to perform," those opinions are not entitled to significant deference in the RFC determination and do little to bolster the claimant's assessments of her own capabilities. *See Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 753 (6th Cir. 2012).

Here, the ALJ found that Plaintiff Shahin has four severe impairments—bilateral C6 and S1 polyradiculopathy; bilateral knee osteoarthritis with May 2017 right degenerative meniscus tear; fibromyalgia; and seronegative arthritis. (ECF No. 12-2, Transcript, PgID 50.) Then, at step four of the disability analysis, the ALJ found that these severe impairments could "reasonably be expected to cause some of the alleged symptoms," which included chronic pain in her back, neck, buttocks, thighs, shoulders, hips, and knees, but that Plaintiff's statements about the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at PgID 54–55.)

9

Therefore, the ALJ determined that Plaintiff has the RFC to perform light work subject to a number of postural and other limitations. (*Id.* at PgID 53.) This determination led to a conclusion that Plaintiff was not under a disability because she has the RFC to perform her past relevant work as a blow machine operator as well as a number of other jobs in the national economy. (*Id.* at PgID 59–61.)

ALJ Mantel analyzed all four severe impairments together, which makes it difficult to determine whether she placed too much emphasis on objective medical evidence regarding Plaintiff's fibromyalgia or whether her frequent references to objective medical evidence were in relation to Plaintiff's other severe impairments. (*See id.* at PgID 55–59.) Nevertheless, the fairest reading of ALJ Mantel's opinion is that she overemphasized the objective evidence in finding that Plaintiff Shahin's statements that, due to the intensity, persistence, and limiting effects of her pain, she could only "lift and carry up to five pounds; stand for 10 to 15 minutes at a time; walk for 10 to 15 minutes at a time; and sit for 30 minutes at a time," inconsistent with the record as a whole. (*Id.* at PgID 55.) Throughout ALJ Mantel's analysis of the evidence, she drew contrasts between Ms. Shahin's reported symptoms and the objective evidence on record.

For instance, the ALJ noted that, in a May 2017 appointment for back and neck pain, Ms. Shahin had tenderness in her neck and lumbar back paraspinal

10

regions, with some sensory loss in her arms and legs, "[y]et, on exam, the claimant as [sic] noted to have normal muscle bulk and tone, and normal 5/5 strength in the upper and lower extremities." (*Id.* at PgID 56.) Similarly, the ALJ noted that Ms. Shahin reported tenderness in her ankle, back, and several other points in her body in a June 2017 rheumatology appointment, "[y]et, the rheumatologist further reported a negative straight leg raise test, negative sacroiliitis, negative maneuvers, normal strength and tone (5/5), normal sensory system, and normal reflexes." (*Id.* at PgID 57.) In another example of ALJ Mantel's overemphasis on objective findings, ALJ Mantel discounted the opinion of occupational therapist Denise Durrell, in part, because Ms. Durrell's test results were "not consistent with the other objective exams of record, which consistently show normal (5/5) strength and normal muscle tone and bulk." (*Id.*) ALJ Mantel did consider Ms. Shahin's subjective complaints, but she only included those complaints in her RFC determination "to the extent that they are consistent with the evidence as a whole." (*Id.* at PgID 58.) This led ALJ Mantel to the conclusion that "the objective medical evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability." (*Id.* at PgID 58.) ALJ Mantel's overreliance on objective evidence to discount Ms. Shahin's subjective complaints was in error.

This error, however, was harmless because substantial evidence supports the ultimate conclusion that Plaintiff is not disabled. *Cf. Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits.") (internal citation omitted). Proper analysis of the evidence to determine the "intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities" indicates that Ms. Shahin had the RFC to do sedentary work with additional limitations as identified by ALJ Mantel. 20 C.F.R. §§ 404.1567(a), 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . ."); *see Rogers*, 486 F.3d at 247.

Plaintiff testified that she can stand for 10-15 minutes at a time, walk for 10-15 minutes at a time, sit for 30 minutes, and lift and carry up to five pounds. (ECF No. 12-2, Transcript, PgID 96–97.) The opinions of her treating doctors—Dr. Poling, her primary care physician, Dr. Ahmad, her neurologist, and Dr. Venkatram, her rheumatologist—confirm that Ms. Shahin was experiencing a great deal of pain in her back, neck, knees, and, occasionally other regions of her body, but do not provide insight into her functional limitations. (*See* ECF Nos. 12-7, 12-8, Transcript, PgID 414–29, 514–92, 593–97.) The treatment plans suggested by these doctors

involve physical and occupational therapy, changes in diet, losing weight, quitting smoking, medication, and pain management therapy. (*See id.*) None of these doctors expressed an opinion about how much weight Plaintiff could lift and carry, how long she could sit, stand, or walk, or whether she was capable of working. (*See id.*) *Compare Torres*, 490 F. App'x at 753 ("The record includes many progress reports noting her subjective complaints, ordering medication or more tests, and recommending exercise or other treatment options, but these opinions do not necessarily speak to her functional capacity.") *with Kalmbach*, 409 F. App'x at 864 (relying on the plaintiff's treating doctor's recommendation that she work reduced hours and rest for periods of three to five days during symptom flare ups).

The state consultative examiner, Dr. Chiambretti, after reviewing the available medical evidence, concluded that Plaintiff could perform work at the sedentary level, with some additional limitations. (ECF No. 12-3, Transcript, PgID 115–30.) The occupational therapist who performed a physical functional exam of Ms. Shahin opined that Ms. Shahin was functioning at a less than sedentary demand level, although, as ALJ Mantel points out, Ms. Shahin declined to perform the majority of the tests at the examination, based on reports of pain. (ECF No. 12-7, Transcript, PgID 507–12.) As the ALJ also pointed out, occupational therapists are not considered acceptable medical sources, so their opinions are not entitled to

13

significant weight. 20 C.F.R. § 404.1502(a); 20 C.F.R. § 416.902(a). Therefore, substantial evidence supports an RFC determination of sedentary work, plus the additional limitations identified by ALJ Mantel after careful consideration of Ms. Shahin's complaints. (*See, e.g.*, ECF No. 12-2, Transcript, PgID 58 ("[C]onsidering the claimant's testimony regarding difficulty with prolonged sitting or standing, I have incorporated a sit/stand allowance.").)

The vocational expert considered whether there would be jobs in the national economy for an individual limited to sedentary work with Ms. Shahin's additional restrictions and testified that such a person could work as an Order Clerk (248,000 jobs nationally), Bonding Machine Operator (1,100 jobs nationally), and PC Board Assembler (115,000 jobs nationally). (ECF No. 12-2, Transcript, PgID 59–61.) Therefore, Ms. Shahin is not disabled according to the five-step social security framework. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). ALJ Mantel's error in overweighing the objective evidence was ultimately harmless, and substantial evidence supports the conclusion that Ms. Shahin is not disabled.

### IV. CONCLUSION

For all of the reasons stated above, the Court hereby: (1) OVERRULES Plaintiff's Objections (ECF No. 22); (2) ADOPTS the Report and Recommendation of Magistrate Judge Morris (ECF No. 21); (3) DENIES Plaintiff's Motion for

Summary Judgment (ECF No. 16); (4) GRANTS Defendant's Motion for Summary Judgment (ECF No. 20); and (5) AFFIRMS the findings of the Commissioner.

IT IS SO ORDERED.

Dated: January 3, 2020

s/Paul D. Borman
Paul D. Borman
United States District Judge